## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVITRA SMITH<br>109 Jefferson Ave<br>Cheltenham, PA 19012 | : <br> : <br> : <br> : | CIVIL ACTION |
| Plaintiff, | : <br> : | DOCKET NO.: |
| v. | : <br> : | |
| GLOBAL LEADERSHIP ACADEMY<br>CHARTER SCHOOL<br>4601 W Girard Ave.<br>Philadelphia, PA 19131 | : <br> : <br> : <br> : | **JURY TRIAL DEMANDED** |
| Defendant. | : <br> : <br> : | |

### CIVIL ACTION COMPLAINT

Davitra Smith (*hereinafter* referred to as "Plaintiff," unless indicated otherwise), by and through her undersigned counsel, hereby avers as follows:

### INTRODUCTION

1.     This action has been initiated by Plaintiff against Global Leadership Academy Charter School (*hereinafter* referred to as "Defendant") for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq*.), the Family and Medical Leave Act ("FMLA - 29 U.S.C. §2601 *et. seq*.), the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO").[1] Plaintiff asserts, *inter alia*, that she was discriminated against and unlawfully terminated by Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff's claims under the PHRA and the PFPO are referenced herein for notice purposes. She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue-letter under the ADA. Plaintiff's PHRA and PFPO claims however will mirror identically her federal claims under the ADA.

## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for violations of civil rights under the FMLA and the ADA.

3.      This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5.      Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing her Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult individual, with an address as set forth in the caption.

8.     Defendant is a kindergarten through eighth grade charter school comprised of two campuses located in West and Southwest Philadelphia.

9.     At all times relevant herein, Defendant acted by and through its agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

### FACTUAL BACKGROUND

10.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.     Plaintiff was employed with Defendant from in or about September of 2015 through on or about October 6, 2017.

12.     Plaintiff was hired by Defendant to work as a Instructional Assistant but was promoted in March of 2017 to the position of a Special Services Administrative Assistant

13.     On or about June 6, 2017, Plaintiff was involved in a car accident on her way to work and suffered brain trauma (including but not limited to a concussion) as a result.

14.     Due to Plaintiff's aforesaid health conditions, she was (at times) cognitively and physically limited. For example, at all times relevant herein, Plaintiff required limited exposure to light and was not permitted to drive.

15.     Despite Plaintiff's aforementioned disabilities and limitations, she was still able to perform the duties of her job well with Defendant; however, she did require reasonable accommodations at times (discussed further *infra*).

16.     In addition to her own health conditions, Plaintiff's daughter also suffers from a disability referred to as Type 1 Diabetes.

3

17.     Plaintiff's daughter was a student at Defendant; however, Plaintiff was charged with administering her medication if needed, as no one else was properly trained to do so within Defendant.

18.     During the summer of 2017, Plaintiff kept in contact with Defendant's management regarding her own health conditions and inquired about Short Term Disability for same.

19.     In response to her inquires regarding Short Term Disability, Defendant's management informed Plaintiff that if she wanted to go on Short Term Disability, she would have to exhaust all her sick time. Therefore, from July 31, 2017 through August 7, 2017, Plaintiff exhausted her sick days (which, as per Defendant's policy, were available to employees at the beginning of the year).

20.     After exhausting her sick days (as discussed *supra*), Plaintiff was then informed that Defendant's policy changed and sick time was not offered up front but was to be accrued over time. While this issue was partially resolved, Plaintiff still lost three personal days as a result.

21.     Following this incident (discussed in Paragraphs 19-20 of this Complaint), Plaintiff returned to work full time with accommodation requests.

22.     Plaintiff's aforesaid accommodation requests consisted of limited stimulation and the ability to work in a dark, quiet space.

23.     After conveying her accommodation requests (discussed *supra*) to Defendant's management upon her return to work, Plaintiff was informed multiple times by Defendant's management, including but not limited to Chief Executive Officer, Dr. Naomi Johnson Booker ("Dr. Booker") that she would not be accommodated.

4

24.     Defendant's management rejected Plaintiff's aforesaid accommodation requests without providing any logical or legitimate reason as to why and without first engaging in the interactive process, as required by the ADA.

25.     Plaintiff's accommodation requests could have easily been granted. In fact, prior to Plaintiff's accident and subsequent diagnoses, she was informed that she would be receiving her own office space for the 2017/2018 school year – which would have been conducive to her health conditions. This office space was then stripped from Plaintiff after she was involved in the aforesaid accident, was diagnosed with brain trauma/a concussion, and had apprised Defendant's management of her health conditions (discussed *supra*).

26.     Following her return to work and requests for reasonable accommodations, Plaintiff was treated with extreme hostility and animosity by Respondent's management, including but not limited to Dr. Booker.

27.     By way of example only, Plaintiff was treated in a demeaning and condescending manner, denied reasonable accommodations, told on multiple occasions that she should go out on Short Term Disability, made to work in conditions that were not conducive to her disabilities, made to work at Defendant's "Southwest" building (even though she could perform all her job duties from the "West" building that she had been permanently assigned to), and denied a raise - which was promised to her prior to disclosing her health conditions and need for reasonable accommodations.

28.     As a result of Defendant's refusal to properly accommodate Plaintiff or engage in the interactive process with her, Plaintiff engaged the assistance of an attorney who sent a letter to Defendant on or about September 1, 2017.

29.     Plaintiff's attorney's aforesaid September 1, 2017 letter to Defendant expressed concerns with Defendant's failure to follow their obligations under the ADA, stating in part:

> As I am sure you are aware, you and GLA are obligated under state and federal law to accommodate Ms. Smith. Specifically, under the Americans with Disabilities Act ("ADA") GLA must engage in the "interactive process" . . .
>
> At this time, we are asking you and GLA to comply with Ms. Smith's doctor's certification and her limitations. If at any time you do not believe it is necessary for GLA to comply with such limitations or cannot provide them, you should have GLA's attorney contact me immediately.

30.     Despite Plaintiff's then-attorney's aforesaid letter, Defendant still refused to engage in the interactive process with her or accommodate her health conditions. Instead Defendant's management subjected Plaintiff to increased animosity and hostility (discussed further *infra*).

31.     In addition to expressing concerns regarding Defendant's failure to follow its obligations under the ADA regarding her own health conditions and accommodations, Plaintiff also complained of and objected to Defendant's failure to comply with the ADA as it pertains to her daughter's disability. For example, on or about September 26, 2017, Plaintiff sent an e-mail to Alicia Kennedy (Director of Special Services) and Sabrina Leggett (Special Education Liason) stating in part:

> Not having a full time nurse who is consistent and knowledgeable of her requirements, has made Jeniece [Plaintiff's daughter] anxious about her care at school.
>           . . .
> The paramount priority is that the utmost accurate care is administered when the need is required. I am sure you will agree that the most important priority is the health and welfare of a scholar. Non-compliance could be detrimental and it is imperative to be proactive than reactive. It is also important the GLA is in compliance with the American Disabilities Act, providing the care necessary in a learning environment for all special needs scholars. My services are required as a

result of staff and/or nurses unfamiliar with or not trained properly with her T1D needs. When Jeniece needs T1D attention, the need is <u>immediate</u> at any given moment, her dealing with school staff or nurses only vaguely familiar is not an acceptable option. Precise, knowledgeable care is requested and required.

32.     On or about October 3, 2017, Plaintiff's physician faxed an application to Defendant requesting intermittent FMLA leave or a reduced schedule for Plaintiff's serious health condition (another reasonable accommodation under the ADA).

33.     On or about October 4, 2017, the day after submitting an application for FMLA, Plaintiff was brought into a meeting wherein Defendant's management scolded her for participating in activities outside of work and insinuated that Plaintiff was lying about her health conditions and need for reasonable accommodations - even though the activities which Plaintiff was performing outside of work had been approved by her physician.

34.     During this same meeting (on October 4, 2017), Dr. Booker informed Plaintiff that she [Dr. Booker] was going to get Defendant's legal team involved regarding Plaintiff's extracurricular activities and again told Plaintiff that she was not accommodating her health conditions.

35.     In addition to discussing Plaintiff's health conditions, Defendant also discussed a recent event that had occurred with Plaintiff's daughter which raised concerns for Plaintiff, as Defendant was still not complying with the ADA. Plaintiff had informed Defendant during this October 4, 2017 meeting that she did not believe Defendant was properly accommodating her daughter (a disabled student within Defendant).

36.     On or about October 5, 2017, Plaintiff left work early because of her health conditions and informed her Director (Ms. Kennedy) and Principal (Shoshana Tyler) of her intent to leave early from work that day.

37.     On or about October 6, 2017, Plaintiff was informed that she was being terminated from her employment with Defendant via a letter dated October 5, 2017.

38.     The purported reasons for Plaintiff's termination were job abandonment and dereliction of duty, claiming that (1) on October 4, 2017 Plaintiff walked out of a meeting and refused to participate when Defendant's management was discussing potential accommodations; (2) refused to report to the Southwest campus on October 5, 2017; and (3) left the school building on October 5, 2017 without proper notification to her supervisor.

39.     The reasons given for Plaintiff's termination are completely fabricated and pretexual, as:

    i.   At no point in time during Plaintiff's and Defendant's October 4, 2017 meeting were potential accommodations for Plaintiff's health conditions genuinely discussed. In fact, as stated earlier, Dr. Booker harassed Plaintiff during this meeting, insinuated that Plaintiff was lying about her health conditions because she was engaging in extracurricular activities, informed Plaintiff that she going to get Defendant's legal team involved regarding Plaintiff's extracurricular activities, and again reiterated that Plaintiff would not be accommodated;

    ii.  When Plaintiff had left the October 4, 2017 meeting, the conversation regarding her job and health conditions had ceased and the discussion had turned to a dispute regarding Plaintiff's daughter. Plaintiff raised the issue that her daughter (a student within Defendant) was not being properly accommodated under the ADA and Defendant disputed Plaintiff's claim. Rather than argue with Defendant about a difference in opinion as to

8

whether Defendant had properly accommodate her daughter, Plaintiff excused herself from the meeting;

iii. Plaintiff never refused to go to Defendant's Southwest building on October 5, 2017. Plaintiff simply inquired as to whether she was going to be properly accommodated in the Southwest building and whether her daughter was going to be assigned a knowledgeable and skilled nurse while she was at the Southwest building (as Plaintiff was still responsible for administering her daughter's medication the majority of the time); and

iv. Plaintiff notified both her supervisor/director and the principal of Defendant that she was leaving early on October 5, 2017 due to a flare up of her health conditions.

40.     The termination letter provided to Plaintiff on October 6, 2017 not only informed her of the reason for her termination but also communicated a response to her requests for accommodations (dating back to August 16, 2017).

41.     In reference to her requests for reasonable accommodations, Defendant stated in its October 5, 2017 letter: "While genuinely looking for a solution, in good faith, we have determined that your requested accommodations (1) prevent you from performing essential functions of your job; and (2) pose undue hardship on GLA by way of expense or inconvenience."

42.     Defendant's representation that it "genuinely" looked for a solution "in good faith" regarding Plaintiff's accommodation requests is absurd:

i. First, Defendant took nearly two months to inform Plaintiff in writing that her accommodations requests could not be granted. However, prior to

9

October 5, 2017, Plaintiff was informed verbally on numerous occasions that Defendant would not accommodate her health conditions;

ii. Second, Defendant's management **never** engaged in the interactive process with Plaintiff. For example, Defendant never (1) spoke to Plaintiff to get a real understanding of her health conditions; (2) asked for additional medical documentation regarding her health conditions and/or need for reasonable accommodations; (3) never contacted her doctor or even asked to speak with her doctor; and (4) never contacted her attorney, even though her attorney invited them to speak with him if Defendant felt they could not accommodate her;

iii. Third, instead of engaging in the interactive process with her, Defendant's management berated her with insinuations that her health conditions and need for accommodations were not genuine; and

iv. Fourth, Defendant's management waited until the same day they terminated Plaintiff to inform her in writing why it allegedly could not accommodate her disabilities.

43.    Plaintiff believes and therefore avers that she was (*inter alia*) subjected to a hostile work environment, denied a raise, and terminated in violation of the ADA and FMLA.

44.    Plaintiff also believes and therefore avers that Defendant's management failed to engage in the interactive process or accommodate her disabilities in violation of the ADA.

**First Cause of Action**
**Violations of the Americans with Disabilities Act, as Amended ("ADAAA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;**
**[3] Failure to Accommodate; [4] Hostile Work Environment)**

45.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46.     Based on the foregoing, Plaintiff asserts that Defendant failed to engage in the interactive process with her and refused to accommodate her disabilities.

47.     Plaintiff was also subjected to a hostile work environment during her period of employment such that she was *(inter alia)* treated in a demeaning manner, pretextually admonish, given inaccurate information regarding Short Term Disability (resulting in a loss of three personal days), subjected to discriminatory/derogatory comments, denied a raise, denied accommodations, and without reason forced to work in two different buildings (even though she could perform her work at the West building – to which she had been previously permanently assigned).

48.     Plaintiff believes and therefore avers that she was subjected to a hostile work environment and denied a raise because of: (1) her known and/or perceived health problems; (2) her record of impairment; (3) her requested accommodations; and/or (4) her expressed concerns and objections regarding Defendant's failure to comply with the ADA as it pertains to her own health conditions and need for accommodations.

49.     Furthermore, Plaintiff believes and avers that she was terminated from her employment with Defendant because of: (1) her known and/or perceived disabilities; (2) her record of impairment; (3) her requested accommodations; (4) Defendant's failure to accommodate her disabilities; and/or (5) her expressed concerns and objections regarding

Defendant's failure to comply with the ADA as it pertains to her own health conditions and need for accommodations.

50.     These actions as aforesaid constitute violations of the ADAAA.

**Second Cause of Action**
**Violations of the Americans with Disabilities Act, as Amended ("ADAAA")**
**(Retaliation – Wrongful Termination & Hostile Work Environment)**

51.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

52.     Plaintiff believes and therefore avers that she was subjected to a hostile work environment, denied a raise, and terminated for (1) advocating on behalf of a disabled student (her daughter) and (2) raising concerns/objecting to Defendant's failure to comply with their ADA obligations as it relates to disabled students (specifically, he daughter).

53.     These actions as aforesaid constitute violations of the ADAAA.

**Third Cause of Action**
**Violations of the Americans with Disabilities Act, as Amended ("ADAAA")**
**(Associational Disability Discrimination)**

54.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

55.     Upon information and belief, Plaintiff was subjected to a hostile work environment and terminated by Defendant for being perceived as distracted for dealing with her daughter's health problems as well as other reasons related to her daughter's health conditions.

**Fourth Cause of Action**
**Violations of the Family and Medical Leave Act ("FMLA")**
**(Interference and Retaliation)**

56.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

57.     Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

58.     Plaintiff requested leave from Defendant, her employer, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

59.     Plaintiff had at least 1,250 hours of service with the Defendant during her last full year of employment.

60.     Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

61.     Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

62.     Defendant committed interference and retaliation violations of the FMLA by: (1) disciplining and terminating Plaintiff for requesting and/or exercising her FMLA rights; (2) by considering Plaintiff's FMLA leave needs in making the decision to terminate her; and/or (3) making negative comments to and/or engaging in conduct which discouraged Plaintiff from exercising her FMLA rights and which would discourage, dissuade and/or chill a reasonable person's desire to request and/or take FMLA leave.

63.     These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B.      Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands of Defendant until the date of verdict;

C.      Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G.      Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

14

By:

Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square
Building 2, Ste. 128
Bensalem, PA 19020
(215) 639-0801

Dated: July 20, 2018

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

DAVITRA SMITH

v.

GLOBAL LEADERSHIP ACADEMY CHARTER SCHOOL

CIVIL ACTION

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (X )

| 7/20/2018 | | Plaintiff |
| --- | --- | --- |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Clv. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: __109 Jefferson Avenue, Cheltenham, PA 19012__

Address of Defendant: __4601 W. Girard Avenue, Philadelphia, PA 19131__

Place of Accident, Incident or Transaction: __Defendant's place of business__

---

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __7/20/2018__    _Attorney-at-Law / Pro Se Plaintiff_    __ARK2484 / 91538__
    _Attorney I.D. # (if applicable)_

---

**CIVIL: (Place a √ in one category only)**

*A.    Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☒ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
    *(Please specify):* _____

*B.    Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):*
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __Ari R. Karpf__, counsel of record *or pro se plaintiff*, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: __7/20/2018__    _Attorney-at-Law / Pro Se Plaintiff_    __ARK2484 / 91538__
    _Attorney I.D. # (if applicable)_

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

SMITH, DAVITRA

### DEFENDANTS

GLOBAL LEADERSHIP ACADEMY CHARTER SCHOOL

**(b)** County of Residence of First Listed Plaintiff     Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); FMLA (29USC2601)

Brief description of cause:
Violations of ADA, FMLA, the PHRA and the Philadelphia Fair Practices Ordinance.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*:

JUDGE _____     DOCKET NUMBER _____

DATE   7/20/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

[ Print ]     [ Save As... ]     [ Reset ]